THE WATER COMMISSIONERS OF JERSEY CITY vs. THE MAYOR AND COMMON COUNCIL OF THE CITY OF HUDSON.

A water company, authorized by legislative enactment to use the soil under the public roads for the purpose of constructing their works, having laid their pipes across the street of a city, will be compelled to lower them so as to conform to a new grade established by municipal authority.

No public right can be taken away by mere inference or legal construction —it can only be by express grant.

Equity will not interfere by injunction to redress public nuisances where the object sought can be attained in the ordinary tribunals.

*McClelland* and *Zabriskie*, for complainants.

*Vroom* and *Scudder*, for defendants.

THE CHANCELLOR. By an act of the legislature, approved on the 25th of March, 1852, entitled, " An act to authorize the construction of works for supplying Jersey City and places adjacent with pure and wholesome water," the mayor and common council of Jersey City were authorized to take and convey into Jersey City, and places adjacent thereto, such portion of the water of the Passaic river, flowing between the villages of Acquackanonck and Belleville, as might be required to furnish the inhabitants with a supply of pure and wholesome water. All authority granted by the act, it is directed, shall be exercised by and through a board of commissioners. The commissioners are authorized to take and hold any lands

or other real estate necessary for the construction of any canals, aqueducts, reservoirs, or other works for conveying or containing water, or for the erection of any buildings or machinery, or for laying any pipes or conduits for conveying water, and to do any other act necessary for accomplishing the purposes contemplated by the act. And by the 6th section it is enacted, "that the commissioners in behalf of the mayor and common council of Jersey City shall have the right to use the ground or soil under any roads, railroad, highway, street, lane, alley, or court within this state for the purpose of constructing the works contemplated by this act, on condition that they shall cause the surface of such road, railroad, highway, &c., to be restored to its original state, and all damages done thereto to be repaired, and all damages to any company, by any interruption of travel while the work is constructing, to be repaid to them."

In pursuance of the powers thus conferred, the water commissioners of Jersey City caused the necessary works to be constructed, and by means thereof are now supplying the inhabitants of Jersey City and Hoboken with water. Among other works, they caused to be constructed in the township of North Bergen, which is now embraced within the limits of the City of Hudson, a reservoir and pipes leading from thence through a street theretofore dedicated to the public use, and now known as Madison avenue. The pipes were laid in the year 1854, in compliance with the directions of the act, three feet below the surface of the soil, and are now used for the purpose of conducting the water from the reservoir to Jersey City and Hoboken.

The bill charges that the municipal authorities of Hudson City, which was incorporated on the 11th of April, 1855, and certain other persons pretending to act by virtue of authority given them by said city, have recently excavated the soil on each side of the pipes at the junction of Madison avenue and Montgomery avenue, in Hudson

City, and threaten to blast the rocks near and under the pipes, and that, if permitted to do so, the pipes will be destroyed, the supply of water cut off, and irreparable injury done to the works of the complainants; that by reason of the excavation already made, the pipes are placed in a condition exceedingly unsafe and liable to injury. The complainants ask an injunction to restrain the corporation of Hudson City and their agents from excavating around or under the pipes of the complainants, or from blasting rocks within sixty feet of the same.

The material charges of the bill are admitted by the answer, except so far as relates to a purpose on the part of the defendants to injure or destroy the works of the complainants, which is fully and expressly denied. The answer alleges that the work which forms the subject of complaint, and which the injunction is designed to arrest, consists in the grading of Montgomery avenue, a public· street in Hudson City, by the municipal authority of said city, by virtue of powers vested in them for that purpose; that the grade of the street, as established at the intersection of Montgomery and Madison avenues, requires that the pipes of the complainants should be placed at a lower level, and that, if they remain in their present position, they will create an obstruction and nuisance in the highway.

The case thus presented is briefly this. The water commissioners of Jersey City, in the construction of their water works, laid their main pipe from the reservoir to the city through Madison avenue, now one of the public streets of Hudson City. The work was done in pursuance of express legislative authority for that purpose. Hudson City was incorporated since the water works were constructed. The city authorities, in grading their streets in pursuance of powers conferred by the charter, have so fixed the grade of Montgomery avenue, where it crosses Madison avenue, that a portion of the pipe is above the level of the street. The grade must either be abandoned

or the pipe lowered. The pipe, where it crosses Montgomery avenue, is laid on solid rock, and the change of level will involve serious expense. By whom must this expense be borne if the level of the pipes must be changed?

It is a principle, too clear to admit of discussion, that the legislative grant of powers and privileges to the water commissioners of Jersey City can be in no wise impaired or annulled by the subsequent incorporation of Hudson City or the grant of conflicting powers. If the grants are so conflicting that both cannot be exercised the prior grant must prevail. If the grade adopted by Hudson City for one of its streets be such as necessarily to destroy works erected under the sanction of the legislature the grade must be abandoned. If both grants may be exercised, each party must so use its rights as not to interfere with the exercise of the rights of the other.

What, then, is the right conferred by the legislature upon the complainants? It is, in the language of the act, "to use the ground or soil under any road, railroad, highway, street, lane, alley, or court within this state for the purpose of constructing the works contemplated by the act." It is obvious that the right granted is to be exercised in subordination to the public right of way. It was not intended to impair the public easement or the control of the public authorities over it. The grant is made on the express condition that they should cause the surface of the highway or street to be restored to its original state, and that all damage done thereto should be repaired. It legalizes the breaking up of the surface of the highway and the partial and temporary obstruction of public travel for the necessary construction, alteration, and repair of the water works. To this extent it relieves the commissioners from all liability to the public or individuals for trespass or nuisance; but beyond this it confers no right as against the public, much less was it designed to interfere with the right of private property in the soil under the highway. The public have an ease-

ment in the soil—a right of way upon its surface. The commissioners, by consent of the landholders, express or implied, have also an easement—the right of laying pipes under the surface. The legislature concede to the owners of the latter easement, for the purpose of its advantageous exercise, limited and temporary interference with the public easement. This is the full extent of the legislative grant.

But it is urged that the right of the commissioners to have their water pipes under the streets is *property* which cannot be taken from them except in the mode pointed out by the constitution, *viz.* by making compensation. Let it be granted that the right to lay the pipes under the streets, and to keep them there when laid, is a right of property which cannot be constitutionally invaded without compensation, the question still recurs, what is the limit of that right. If the grant to the commissioners had been to place and keep their pipes three feet under the surface of the soil, as it existed at the time of the construction of the works, there might be force in the argument. But that is not in the terms of the grant. All that is granted is a right to place and keep the pipes under the highway. The owner of the soil has a common law right to the use and enjoyment of the soil under the highway. He may open a mine, construct vaults or chambers, erect machinery, lay water pipes, or exercise any other right of ownership in the soil not inconsistent with the public easement. But all these rights are held and must be enjoyed in subordination to the public right of way, including the right of construction, alteration, and repair. It cannot be successfully maintained that a mere easement in the land, though enjoyed and exercised by legislative sanction, can be a more sacred right of property in the eye of the constitution than the right of the landholder himself. It must be held (and such must be the construction of the legislative grant) in subordination to the public easement.

Jersey City v. City of Hudson.

No public right can be taken away by mere inference or legal construction. It can only be by express grant. The legislature have not in express terms, by their grant to the commissioners, deprived the public authorities of their control over the highway in which the water pipes should be laid, nor is it by any means a necessary inference from the grant.

The authorities of Hudson City have an unquestioned right, in the exercise of their municipal powers, to grade the street in question in the manner proposed. If the work is executed, the pipes are left not where the legislature authorized them to be, below the surface of the street, but above it. They become a public nuisance, and must be removed. But by whom? Clearly at the expense of the water commissioners; and if regard be had to economy or safety, it must be under their control and the inspection of their engineer or superintendent. If they refuse or neglect to interfere, it will then be the right and the duty of the authorities to remove them, doing no unnecessary injury to the property of the complainants. It is not seriously denied that the authorities of Hudson City have the right of grading the street; but it is urged that the labor and expense of lowering the pipes must be borne by them. This is clearly a mistake, as will be obvious from a simple consideration. If the land under the pipes consisted of soil which might be removed without injury to the pipes, the grade of the street might be completed without any disturbance of or immediate injury to the property of the complainants. But the pipes have now become an obstruction in the highway and a public nuisance. They are not where the act requires that they should be placed, beneath the surface of the soil. They are moreover exposed to injury and destruction from frost and from the effects of public travel. Is it not clearly the duty of the commissioners to abate the nuisance, and protect their property by removing it out of the highway?

2 N*

It is admitted that the pipes may be lowered without injury to the works. This has already been done by the complainants at another point within the City of Hudson under similar circumstances. The grading of the street does not necessarily involve either the destruction of or irreparable injury to the complainants' works. It is a mere question of time and expense.

The court, in deciding this question, cannot assume that the authorities of Hudson City will, by themselves or their agents, so execute the work as to destroy or unnecessarily to endanger the property of the commissioners. It would be wrong to act upon the assumption that they will destroy or unnecessarily injure a work essential to the comfort, health, and safety of two cities, including a population of nearly 50,000 inhabitants. Such purpose is expressly denied by the defendants' answer. If no higher considerations controlled the defendants, a regard to their own interests, it would seem, must do so. All wilful or malicious diversion of the water from the complainants' works, or destruction or injury of the aqueducts, pipes, or machinery used for procuring or distributing the water, subjects the perpetrators, their aiders or abettors, not only to the payment of the damages, but to indictment and punishment by fine and imprisonment. (*Pamph. L.* 1852, § 21). Though the jurisdiction of courts of equity to redress public nuisances by injunction is of ancient date, and seems clearly established, yet, as a general rule, equity will not interfere where the object sought can be as well attained in the ordinary tribunals. *Attorney General* v. *New Jersey Railroad and Transportation Company*, 2 *Green's Ch. R.* 136, 139, *note.*

The difficulty between the parties has obviously originated in a question of right, which it was proper should be settled before either party had compromised the interests of their constituents. The delay of the complainants to remove their pipes must be attributed to this motive. The right being decided, reasonable time should be

afforded them to remove their property before the defendants proceed with the work of grading the street.

The injunction is denied, and the rule to show cause discharged with costs. The bill will be retained, and if, contrary to the anticipations of the court, any attempt should be made or threatened on the part of the defendants to imperil the safety of the works (the complainants using due diligence to effect the necessary alteration of the level of the pipes) a renewal of the motion for an injunction will be entertained. The importance and necessity of the complainants' works are such to the well being of a large community that the authority of the court should be exercised to the fullest extent for their preservation.

The opinion is limited exclusively to the case made by the bill, *viz.* the interference by the defendants with the pipes of the complainants laid under a public street by legislative authority. An interference with the property of the complainants in land to which they have acquired title, occupied by their reservoirs or aqueducts, presents other and very different questions, in no wise affected by the present decision.